Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania *v.* Margaret Fields, Appellant.

Argued February 6, 1976, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Harold I. Goodman,* with him *Germaine Ingram,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, April 20, 1976:

This is an appeal by Margaret Fields from an order of the Unemployment Compensation Board of Review dated June 25, 1975, which affirmed a referee's denial of benefits. We are faced with deciding whether, under the facts

of this case, Fields' separation from employment is properly characterized as a voluntary termination *or* a refusal of suitable work. We agree with the Board that Fields voluntarily left her employment and we affirm the Board's order.

Fields was employed as an office worker by GAF Photo Service for three and a half years. Her normal working hours were 9:00 A.M. to 5:00 P.M., and she performed a variety of tasks, including mail distribution, switchboard operation, and duplication. On January 16, 1975, Fields was advised by GAF that the amount of work involved in her position did not justify the retention of a full-time employe and that her position was being eliminated. Concurrent with receiving this information, Fields was offered another full-time job, at the same salary, in GAF's plant. The new position was described as a "checker" on GAF's production facility, and the Board found that, from time to time during her three and a half years with GAF, Fields had performed work as a "checker" when requested by GAF.

The "checker" position would have required that Fields report to work at 7:00 A.M. instead of 9:00 A.M., and, because of her asserted responsibility to see that her children arrived at school promptly, Fields refused GAF's offer.

The referee and the Board concluded that Fields had voluntarily left work without cause of a necessitous and compelling nature and denied benefits under Section 402 (b) (1) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second. Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b) (1). This determination is a question of law, and subject to review by this Court. *Rettan v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 287, 325 A.2d 646 (1974).

Fields vigorously argues that her separation has been incorrectly characterized as a voluntary termination, and

that she can only be declared ineligible if it is determined that she refused an offer of suitable work under Section 402(a), 43 P.S. §802(a).[1] Fields would have us hold that she was laid off on January 16, 1974, at which time she imposed a reasonable 9:00 A.M. starting time limitation or any offer of employment.[2]

Initially we note our reluctance to place much weight upon the mere fact that Fields' prior position was eliminated. Employers frequently have occasion to alter work assignments and schedules in accordance with changing business conditions and managerial judgment. We are obligated under the Act to determine whether the new working conditions offered by GAF were "suitable" in light of Fields' working experience and capabilities. Section 402(b)(1), 43 P.S. §802(b)(1), which disqualifies claimants who voluntarily leave their employment, expressly provides that "the department shall give consideration to the same facts, insofar as they are applicable, provided, with respect to the determination of suitable work under [Section 4(t), 43 P.S. §573(t)]." In *Mosley v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 447, 327 A.2d 199 (1974), we expressly noted the necessity of determining whether a job offer is "suitable" when an employe is about to be laid off and refuses a different job with the same employer.

---

1. Fields does not argue that she is entitled to benefits if we hold that Section 402(b)(1) controls this case. This is apparently a recognition of the effect of Section 402(b)(2), 43 P.S. §802(b)(2), which provides that "marital, filial or other domestic obligation or circumstance" is not "cause of a necessitous and compelling nature" sufficient to render a termination involuntary. *See Crumbling v. Unemployment Compensation Board of Review*, 14 Pa. Commonwealth Ct. 546, 322 A.2d 746 (1974).

2. Accordingly, Fields goes on to argue that the 9:00 A.M. limitation is not so restrictive as to effectively remove her from the labor market under Section 401(d), 43 P.S. §801(d). *See Myers v. Unemployment Compensation Board of Review*, 17 Pa. Commonwealth Ct. 281, 330 A.2d 886 (1975).

Fields offers two objections to the suitability of the "checker" position. The first objection is to the changed starting time. In response, it is sufficient to note that it has been held frequently that a change in shift or working hours does not justify a voluntarily termination. *Stalc v. Unemployment Compensation Board of Review*, 13 Pa. Commonwealth Ct. 131, 318 A.2d 398 (1974); *Cook Unemployment Compensation Case*, 194 Pa. Superior Ct. 652, 169 A.2d 594 (1961). This being so, there is no basis for concluding that such a change can render an employer's offer "unsuitable" when a suitability determination is necessary in a voluntary termination context.

Fields' second objection relies upon the difference in the type of work she would perform as a "checker." The record indicates that a "checker's" primary responsibility is to insure that for each photograph which is processed the customer receives both a positive print and a negative. Undoubtedly this is a different function than that which Fields had been performing, but we fail to see how the different responsibilities of a "checker" are of any legal significance. Section 4(t), 43 P.S. §753(t) defines "suitable work" as "all work which the employe is capable of performing." This section goes on to provide that in determining whether work is suitable for a particular individual we may consider prior training and experience, and the labor market for the claimant's usual trade or occupation. Since Fields had, in fact, worked as a "checker," there is no question that she was capable of doing the work. Her prior experience in office work, while involving more diverse tasks, is not described by the record as an occupation requiring any special skills, training or experience which would render the "checker's" position unsuitable by comparison.

We note as well that in Fields' brief she is described as "emphasizing that the hours of the offered employment would not allow her to escort their children to school."

The testimony of Fields also makes it clear that her sole motivation in refusing GAF's offer was her objection to the 7:00 A.M. starting time. Nowhere in the record does Fields indicate that she had any objection to the type of work she would have to perform as a "checker."

In light of the above, we

ORDER

AND NOW, this 21st day of April, 1976, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated June 25, 1975, is affirmed.